Case No. 14-5013, Electronic Privacy Information Center v. United States Department of Homeland Security Appellant. Mr. Jed for the appellant, Mr. Rottenberg for the appellee. Good morning. Good morning, Your Honors. Adam Jed for the government. May it please the Court. At issue here is a procedure that's used by federal and state law enforcement officials who believe that there's some critical emergency, such as a bomb that can be activated by a cellular telephone, in order to weigh the harms and the benefits of turning off that cellular network against, for example, people not being able to access the 911 system using their cellular calls. Could I ask a question? Is there any reason the government didn't provide the Court with a copy of the procedure? The district court did not initially request a copy of it, and so it was not presented to the Court in camera. Obviously, as the Court is aware, FOIA generally envisions that these things can be done by declarations, and I don't think the plaintiffs here have argued that in camera. Well, let me say what I'm concerned about, since it's your burden. In Mr. Howler's declaration, I read it, and it talks about events such as, all right? It doesn't say limited exclusively to. So the such as says to me, well, what else is covered? All right? And it's just odd. He doesn't tell me that he personally has read this, and he doesn't tell me with whom he's spoken that has told him what this document says. And I thought, well, what does it say? I mean, does it say, yes, the type of emergency you're talking about, but does it also drift off into other things as well? Isn't that relevant here? Well, let me address Your Honor's question in a couple of ways. The first is, I mean, that declaration kind of describes the contents of SOP 303, so I think it is clear from the context that at least the declarant had read SOP 303 and was not just, you know, kind of generally pontificating on what may or may not be in the proceeding. I'll give him that, but he says such as. Sure. So, I mean, I want to make sure that we're not misrepresenting anything to the Court. As the declaration says, it would be used in critical emergencies, and the classic example, and indeed the example that this was created to respond to, and the declaration says that too, is cellular-activated bombs. I'm aware from speaking to DHS I've been told, and by the way, the declaration— Let's not go outside the record here. Okay. I apologize, Your Honor. The procedure itself, as the declaration in the record spells out, gives a series of steps that can be used to weigh the benefits of turning off the cellular network to stopping that kind of emergency against those various harms. Now, in some kind of a different scenario than a cellular-activated bomb, obviously if someone has a procedure in their filing cabinet, in theory they could pull that procedure out, but when they then go to weigh the harms and the benefits, obviously the benefits of turning off a cellular network are very different if you have the threat of a cellular-activated bomb than if you have, you know, some other kind of scenario that somebody might imagine could come up. And that's my question. Your Honor, I want to make sure that I'm understanding Your Honor's question. The declaration says such as, and you give me the extreme case, but it could be a lot broader. Well, Your Honor, the purpose of this is to address the extreme case, and remember that this is just a decision-making rubric, so if you used it— Where does it say extreme case? I'm sorry, Your Honor? Where does it say extreme case? I was just picking up on Your Honor's language. I know. That's my point. The language in the declaration is— It says such as. The language in the declaration is critical emergencies, such as, so when I hear critical emergency, I think that connotes an extreme case, a kind of run-of-the-mill case would not be a critical emergency, and that is the language. Well, it depends how you define emergency. Well, it does say critical emergency, but Your Honor, I mean, I don't want to fight Your Honor's question. I'm just trying to understand whether we're just supposed to rubber stamp the declaration. Let me offer three responses to that question, Your Honor. First, as FOIA generally operates, this is done by declaration. No problem there, and we often send it back for more details. Sure. Second, the plaintiffs here, although they have suggested that there may be a segregability problem, have not said that what is in the declaration is different from what is actually in the procedure or requested in-camera review. Have they seen the procedure? Yeah. They have not, but they have not even suggested it. So how could they not? Did they even ask for in-camera review? They have not asked for in-camera review other than perhaps saying— And we have held, I think repeatedly, that in-camera review is not necessary. Yes, that's exactly correct, Judge Santel. But, Judge Rogers, I mean, you know, I don't want to push back on you too much. If the plaintiffs had raised that and if the court thought that it was necessary, obviously that could, in theory, be produced. It might, in this situation, better be produced to the district court, which had just said that E and F are wholly inapplicable under the proper standards. I mean, normally there's a little footnote in the government brief that says if the court wishes to see this document, government is prepared to make it available. There's no such footnote here. I apologize for that, Your Honor. I think that's just because the plaintiffs did not ask for that. But had they asked for it and were it necessary, the government would make it available, presumably to the district court, applying the correct standards under 7F and 7E. All I'm getting at is that you may be totally correct on your legal points. But do we say you're correct and we have no idea what's in the document? Well, the reason, Your Honor, is our legal points, the arguments that we're making before this court, concern the interpretation of 7F and 7E. Yes. And the plaintiffs are making arguments about the interpretation of 7F and 7E. That's right. So you have to show us that this document fits within 7E or 7F. And how do we know is all I'm getting. Sure. And for the purposes of this appeal, Your Honor, all that we're saying is that the district court simply relied on an incorrect legal construction of 7F and 7E. The plaintiffs have not, as an alternate ground, said, well, even if the government's construction is correct, nonetheless, you've got to look at this thing in camera. I would not assert, would you, that your 7E argument is as strong as your 7F argument. I think our 7F argument is far simpler and more straightforward. Obviously, 7F says that this is meant to protect the life and physical safety of any individual. Here, the release of this procedure, whether it is, by the way, Judge Rogers, just used to stop a bomb or used to stop other, in the language of the declaration, critical emergencies, is still something that would stop the danger to any individual and, indeed, to many individuals. So, looking at the plain language, there's nothing that would say that the gloss that the Second Circuit put on it would survive review by the Supreme Court? That's absolutely our view. The government filed a cert petition after the Second Circuit's decision. In light of an intervening law that was passed by Congress, the Second Circuit's decision was vacated. As the court is aware, we have made an alternate argument that even applying the What do you say the court did in Peer? Well, obviously, this court is ultimately the best interpreter of its own decisions. You didn't just concede that we applied the Second Circuit's standard, did you? Well, Your Honor, in Peer, it appears that what the court said is that it doesn't Even if we agree. Yes, that's absolutely correct. I apologize if I misspoke. The court did not say the Second Circuit's standard was correct. It just said even if that were correct, applying that standard, nonetheless, kind of broadly describing the individual's It's a very misleading way in which your opposing counsel cites that language out of context. It followed the phrase even if we agree. Right. I will let my opposing counsel characterize his own view. He'll have to tell us about that, of course. And, Judge Rogers, in addition to the fact that we just think the plain text of 7F refers to any individual, this can also just be inferred from the history and the context of 7F. I mean, it seems that the plaintiffs themselves agree that in 1986, when the language was changed from law enforcement personnel to any individual, that Congress was not trying to add any extra restriction. They were just broadening the category of persons who would be covered. The phrase of any individual is just pure surpluses. Yeah. If Congress had written a statute and said it endangers life or physical safety, period, we would read that. They weren't talking about animals or dogs or cats. They were talking about people. And, in fact, I noticed when I was rereading Peer that Judge Kavanaugh at one point said the inundation maps, if disclosed, could reasonably be expected to endanger life or physical safety. Exactly. Period. I don't see that any individual adds anything to the statute. Well, I think probably the real reason that Congress wrote it that way is just because they were modifying the pre-1986 version of the statute. So you had a statute which referred to the life and safety of law enforcement personnel. They debated sort of how to expand the scope of law enforcement personnel. Some had discussed maybe just having it cover people in the law enforcement sphere, like families of law enforcement personnel, something like that. And the decision that they ended up landing on was that they should protect anyone. And I think that's probably why Congress wrote it this way. I mean, Judge Randolph, it does seem that if it just said life or physical safety, you're probably right that in context no one would think that that applied to animals or property. But someone could come here and make the argument and say, look, physical safety includes physical safety of property or the life of animals. So perhaps Congress could have written this more clearly. Although, to be fair, I do think that the way that Congress wrote it provides a certain degree of clarity that might actually be lacking in the alternate way to write this. I don't know why you would want to go into the legislative history because what's there. We're more than happy to wrestle the plaintiffs around. You know, there are many different sort of statements there that could suggest a very different view. Of the amendments, yeah. As we discussed in our brief, I think actually even the legislative history that the plaintiffs refer to does not support the rule. Are you familiar with Judge Leventhal's description of the legislative history? I'm not sure that I'm familiar with this particular one. It's like going to a party and looking over the crowd and picking at your friends. Yes, Your Honor. I've heard versions of that. Well, we're more than happy just to rely on the plain text which says the life or safety of any individual. And here, any and indeed many individuals are in danger. Although I would certainly be happy to discuss the 7E argument if the court is interested. I would otherwise save my remaining time for rebuttal. Good. All right. Thank you. Thank you, Your Honor. Counsel for Epic. Thank you and good morning. My name is Mark Rodenberg for Epic. The FOIA request that gives rise to this matter before the court was submitted to the government after there was a disruption of cell phone service at subway stations in San Francisco. Is that actually germane to the issue before us? Well, we believe it is, Judge Santel. Wouldn't the law be the same whether there had ever been a disruption in San Francisco or not? We think it speaks to the underlying purpose of the Freedom of Information Act, which is, of course, to inform the public about the activities of government. And the activities of government concerning the disruption of cell phone service impacts virtually everybody in the country today, which even the Chief Attorney General of the U.S.  has said that there is no need for a disruption of cell phone services this term. Also, as Judge Rogers, in her question at the outset, suggests, the fact that this procedure can be used in circumstances that do not simply involve the possible remote detonation of a bomb, but also the disruption of a communications network, underscores the public interest in the disclosure of the relevant government policy. And it was not just, by the way, the incident in San Francisco that gave rise to the request. There was, at the same time, an FCC proceeding on the circumstances to disrupt cell phones. So that is my question. If there had been no such incident in San Francisco, the law would be exactly the same, right? You're here on a matter of law. Yes. Well, as to the interpretation of 7E and 7F, we're happy to argue that Judge Boasberg found correctly that the government had not sustained its burden in asserting those exemptions. But as to the broader purpose of the statute, which we think also must be considered in assessing the scope of the exemptions, which the court spoke to in Milner, those exemptions are to be narrowly construed precisely because the purpose of the statute. But on the other hand, the law is settled and has been for years that why you want the document and what you want to do with it is totally irrelevant to the question whether you're entitled to it. We would agree with that, Judge Randolph. But at the same time, the nature of the dispute here also speaks to the adequacy of the Holzer Declaration. There are two brief paragraphs in that declaration in support of the government's case that 7E and 7F are properly asserted here. The government, in its briefing, continually talks about the remote detonation of a bomb. Do you agree that dealing with that possibility, such as happened in Madrid, is a function of the SOP? We certainly believe it provides a basis for government action in this area. There's no dispute as to that part. In order to prevent that sort of terrorist attack. But you say that, well, it can be used for other things. But once it's disclosed, then its capability of preventing the terrorist attack is diminished. Well, that's the critical. Does that mean that 7F clearly applies? We don't believe so. That is the dispute concerning the scope of 7F. And again, we agree with Judge Boasberg. In the Second Circuit opinion, we didn't mean to suggest, Judge Sentel, that you relied or adopted the Second. You raised your brief, didn't you? I don't believe we did. This court held in Peer that individuals, quote, living downstream of a dam, close quote, constitute a, quote, circumscribed population, close quote, thus allowing the government to identify, quote, with reasonable certainty, close quote, a particularized threat to a discreet population. Excuse me, one more set of quotes in there. Then it says, citing ACLU, the Second Circuit case, without saying that it cited it in the sense of saying, even if we agreed with it, which would seem to suggest we probably didn't. Yes, but Judge Sentel, actually the phrase we were drawing attention to at that point in the brief was circumscribed population. Exactly. And you seem to be suggesting there that we were following the Second Circuit on that point. Well, what we were attempting to do there was, as in the Second Circuit opinion, in your own opinion in Peer, it was significant that the government was able to establish, through the declaration, a circumscribed population, which is to say the downstream population. I think in Peer it suggests that they had to do that. Peer expressly was saying that if we agreed with it, they would meet it. It's not saying we agreed with it. But let me ask you, to the extent that you cited Peer for the reason you say you cited it, why isn't that applicable here as well? I'm not sure if I understand the question. Well, in other words, if the government is concerned about a possible threat to the San Francisco subway or something like that, people who are on the subway, people who live near the subway, I mean, those people are a discrete population, as it were. They may not have no name and address, but. I think that takes us back to the central question, which is what meaning to give the phrase, any individual in 7F. And we think, of course, the words need to be given some meaning. No, but I mean, the Supreme Court word, any, I mean, very expensive, right? And individual, we're still talking about human beings. It doesn't say a limited number and it doesn't say, you know, by name or zip code or anything. Well, I think this court in Peer did suggest that there needed to be some specificity, but that's, that's my point that in this phrase you've been discussing with Judge Kavanaugh, that same sort of specificity here. Well, we believe that the burden is on the government to establish the nexus between the harm that they have described and the population that would be impacted. And that was clearly the case in Peer. But all I'm getting at is that if the government's concerned about a bomb at 7th Street, everybody who's at 7th Street at the time the bomb goes off is, is the harm, the circumscribed harm population, isn't it? But that presumes that the government has information that there is a particular threat with a geographic boundary. And that doesn't exist here. The government's argument relies on a speculative judgment. My problem with your presentation is, is that it theoretically, it's, it doesn't jive with the purpose of FOIA. And let me just explain. If I take your argument to its end, it means that the greater the harm, then the more likely, the harm to be prevented, the more likely it is that you're entitled to the document. I don't think that's our argument. Well, it is your argument. And the reason it's your argument is that if you had a particular procedure in place, for example, to prevent nuclear attack on the entire United States, you would say, well, that's not good enough because there's no discrete population involved and therefore you have to turn the document over. So the broader the harm, the more you're entitled to the document. And that seems to me to be exactly the opposite of what FOIA 7F contemplates. I think because the structure of the FOIA places the burden on the agency to demonstrate the application of the exemption. It's the agency that needs to show that there is that risk of harm to any individual. Well, that's a non-sequitur. The agency has to show that it comes within this exemption. That does not say whether they have to define the population or not. It doesn't follow that they have to meet your standard of what the statute means. Well, we think there should be some specificity here. Well, I certainly. You seemed to say a moment ago. Yes. That Peer suggested there had to be some specificity. I don't recall when I signed off on Peer that it had any such requirement in it. Neither did I. Nor would Mr. Randolph. Well, you're putting something in that statute that the court didn't. Well, excuse me, in that case that the court didn't. Judge Santel, we're looking at the opinion. We're looking at the details that were provided in the Fitton Declaration, which were far more extensive than the details provided by Mr. Holzer in this declaration. That doesn't answer that question. We're looking at. That doesn't answer that question. We're also looking at. Peer did not suggest that there had to be a specified population. The most Peer said was that even if there has to be a specified population, there is one here. That's the most Peer said in that regard. Judge Santel, I believe Peer also turned on your reading and Judge Kavanaugh's reading of Justice Alito's concurrence in Milner. And Justice Alito's concurrence in Milner did speak to the seven issue, seven F issue and pointed also to the fact that there were critical infrastructure documents, blueprints and maps at issue. And that was also the matter before this court in Peer. It was the dam vulnerabilities. It was the emergency action plan. It was the maps. These are all specific documents that describe the vulnerabilities that the government was attempting to respond to. We're talking about something very different. This is a government policy. Let's go to the very language of the statute and tell me why any individual in any sense suggests that it applies with greater structure, greater force to a smaller group of individuals than to a larger group of individuals. We're not arguing that this turns on whether it's a small group or a large group. We're arguing as to the specificity of the government's description of the was underscoring. In his opinion, the government simply failed to establish sufficient specificity. That doesn't go to how large the group could be. It could be the, I thought I read your brief complaining that this could open it up to something that harms the entire population. Did I under the government's? Yes. Under the government's interpretation. What's wrong with that? Why doesn't the statute cover 300 million individuals as well as it covers 30 individuals? Because if we take the B seven analysis requiring only that the government show that the record was compiled for law enforcement purpose and couple it with an unbounded risk of harm to the public, then the government only need assert that there's some risk to the public. If any law enforcement purpose related document has released, it would collapse that exemption into the other exemptions, which is precisely what the court warned about in Milner. Because in looking at B2, the court said we should not allow this one exemption B2 to engulf others. That's the outcome that would be produced. In fact, just Centella, you have a couple of opinions, I believe, which point to the scope of seven, a in protecting against the disclosure of information that might adversely affect the law enforcement prosecution. Well, the government's argument for this broad reading of seven F reaches, we believe reaches a similar outcome to several of your opinions concerning seven a, because they are saying in effect that one of the reasons that would support their broad interpretation of seven F is to prevent the possible destruction of useful evidence. But that of course is the type of concern that you've addressed in the seven a opinions. Now when we're talking about the freedom of information act, we do believe that the thumb is placed on the side of disclosure because that is what the court has said. That is the purpose of the statute. And it's not only that it favors public disclosure, but it means specifically that the exemptions must be read narrowly given a narrow compass. As the court said in Millman, that's all we're asking that we can narrow beyond what Congress has narrowed. We cannot change the terms of Congress. We're not asking you to do that now to the extent that you, how would you define any individual to not include the entire population of the United States in the context of that tenant? Any individual part of the determination and seven F is the relationship between the affected population and the harm asserted. If the government is simply able to argue that the disclosure of the document could possibly impact any individual in the United States, then that essential nexus requirement, which the court has found in several cases goes away. Could reasonably be expected to endanger life or the life or physical safety of any individual. How does that limit it to a defined group of individuals as opposed to any individual? Well, we think those words have some weight, have some meaning. Yeah. Distinguish the physical harm to an animal or process. Well, the government makes that argument. The government makes that argument judge Randolph and they're brief. We didn't find it very compelling because of course that exact same phrase refers to a life. So presumably seven F is speaking about individuals. It's not speaking about property or animals. There's a contemplation that in addition to people, there's some, some circumscribed population and even in here, certainly not adopting the second circuit. I just don't understand if, if the threat is a nuclear attack on, on the New York city, I don't know what the population of New York city is with 8 million, something. And so in order to satisfy your theory, make sure that what, what the government does is pick 10 names out of the phone book and puts them in. These are the, any individuals. Why does that make any sense? Well, no one is arguing that people need to be identified by name. And certainly that wasn't a contention in our brief or a Queens, you know, that's better than New York, the New York metropolitan area. Well, it's more specific under your theory. Yes. I mean, to the extent that the harm could be established, it would satisfy seven F, but also to the extent that you're willing to consider the legislative history of seven F it's significant that Senator hatch, when he was the chairman of the judiciary committee seeking to address a phrase, law enforcement personnel and recognizing that there are other people associated with an investigation, confidential informants, witnesses, a family members, trying to come up with some language to protect the information of those individuals associated with an investigation that's reflected in this floor statement. That's what he believed he was seeking to accomplish. There was never a hearing on the amendments in 1986 legislation that had been introduced in the 97th. Congress wasn't adopted until the 99th. You know, you trigger a question. It's really not directly on point, but the second circuit case was overruled by legislation. Is that correct? Yes. When that legislation said, I'm not familiar with the legislation. You're on it. If there are no further questions, thank you. Thank you. All right. Counsel for appellant. Thank you, your honors. It seems like the court has the issues on hand. Judge Randolph, I might be able to answer your question to my friend about the legislation. My understanding is that it was a specific piece of legislation which said that if the secretary of defense made a particular finding about the danger of releasing the photographs that were at issue in that case, that then the photographs would be shielded. So it was kind of specific. It was a case specific piece of legislation. That's correct. Unless the court has any other questions. Yeah, thank you. We'll take the case under advisement.
judges: Rogers, Sentelle, Randolph